NO. 07-07-0269-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



AUGUST 22, 2007


 ______________________________



GUY L. M. FLOYD, F.P.C.S., INC., FLOOR P.C.S., LTD.,


AND FLOORS, INC., APPELLANTS



V.



PHILIP VIPOND, APPELLEE


_________________________________



FROM THE 150TH DISTRICT COURT OF BEXAR COUNTY;



NO. 2004-CI-14903; HONORABLE JANET P. LITTLEJOHN, JUDGE


_______________________________



Before CAMPBELL and HANCOCK and PIRTLE, JJ. 

ON MOTION TO DISMISS


 Appellants/Cross-Appellees Guy L. M. Floyd, F.P.C.S., Inc., Floor P.C.S., Ltd., and
Floors, Inc., and Appellee/Counter Appellant Philip Vipond, each have filed Voluntary
Motions to Dismiss. No decision of this Court having been delivered to date, we grant the
motions. All costs of this appeal are assessed against the party incurring the same. 
Accordingly, the appeal is dismissed. Tex. R. App. P. 42.1(a)(1). No motion for rehearing
will be entertained and our mandate will issue forthwith.


 Mackey K. Hancock

 Justice


false
 false
 false
 
 
 EN-US
 X-NONE
 X-NONE
 0 pt
 0 pt
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-0035-CV

 

IN THE
COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 

FEBRUARY 23, 2011

_____________________________

 

 

AURORA PETROLEUM, INC.,  

 

                                                                                    Appellant

v.

 

CHOLLA PETROLEUM, INC.,  

 

                                                                                      Appellee

_____________________________

 

FROM THE 46TH DISTRICT COURT
OF HARDEMAN COUNTY;

 

NO. 10,426; HONORABLE DAN MIKE
BIRD, PRESIDING

_____________________________

 

Memorandum Opinion

_____________________________

 

Before
QUINN,
C.J., and  CAMPBELL and HANCOCK,  JJ.

            This
appeal involves a farmout agreement[1]
wherein Aurora Petroleum, Inc. (Aurora) and Cholla Petroleum, Inc. (Cholla)
agreed that Cholla would drill a test well at a location mutually acceptable
to both parties.  After Aurora rejected
the two drilling sites proposed by Cholla and the deadline to drill lapsed,
Aurora demanded the return of the lease interests it conveyed to Cholla.  Yet, it refused to return the $50,000 Cholla
paid it as part of the transaction.  The question
before us is whether the mutually acceptable provision rendered the agreement
unenforceable as a matter of law.  The
trial court found that it did and returned the parties to the positions they
were in prior to formation of the agreement. 
It further ordered Aurora to return the $50,000 to Cholla.  On appeal, Aurora contends that there was no
lack of mutual assent as to any essential term of the contract and it was not
unjustly enriched by retaining the $50,000. 
We disagree, overrule the issues, and affirm the judgment.     

            Background

            On
November 1, 2006, Aurora and Cholla entered into an exploration agreement of the Goodlett Prospect
in Hardeman County, Texas.  Pursuant to
that agreement, Aurora agreed to assign to Cholla its interest in four leases
and share with Cholla certain geological and geophysical data. 
Those leases as well as a fifth specified lease owned by Cholla and any
other leases acquired by either party within a designated area constituted an
area of mutual interest comprising the prospect.  Cholla agreed to pay $50,000 to Aurora and to
commence the drilling of a test well on or before January 23, 2008, at a location mutually acceptable
to both parties.  Should Cholla fail to
comply with its obligation to timely drill the test well, it was to reassign
to [Aurora], or to its designee, all of [Chollas] rights, titles and interests
in the Leases, this Agreement, and in the Prospect . . . .  

            Though
Cholla proffered several drilling locations to Aurora, the latter rejected
each.  Indeed, nothing in the contract
obligated Aurora to agree to any location; nor did the contract provide
guidance as to how the location would be selected.  And, once the deadline to drill lapsed,
Aurora demanded the return of the four leases it conveyed to Cholla and at
least one other acquired by Cholla from a third party. 
Cholla reassigned to Aurora the original four leases but refused to
assign any others.  That resulted in
Aurora suing Cholla for specific performance. In turn, Cholla sought to recover
the $50,000 it had paid to Aurora after the latter refused to return it.  

Both parties filed motions for
summary judgment.  Cholla sought both a
traditional and no-evidence
summary judgment on the basis that the agreement was unenforceable as a matter
of law because the parties did not agree on an essential term of the contract, i.e. the location of the test well, and that Aurora
had been unjustly enriched by $50,000. 
Aurora moved for a traditional summary judgment on the basis that there
was no genuine issue of material fact that the agreement was valid and had been
breached by Cholla. 

Standard
of Review

We review motions for summary
judgment under the standards discussed in Kimber
v. Sideris,  8 S.W.3d 672, 675 (Tex. App.Amarillo
1999, no pet.).  When both parties move
for summary judgment on the same issue and the trial court grants one and
denies the other, we may determine all the questions presented and render the
judgment the trial court should have rendered. 
Valence Operating Co. v. Dorsett, 164 S.W.3d
656, 661 (Tex. 2005).  

 Enforceability
of the Contract

            In a nutshell, what we have here is a
party who seeks to retain or recover more than it began with simply by invoking
contractual provisions that effectively obligated it to do nothing.  Admittedly, Aurora was bound to assign to
Cholla four leases but those leases could be recovered by Aurora if the latter
simply refused to approve any drilling site until the drilling deadline
expired.  So, not only was it actually
free to give up nothing but now it wants to keep the fruits delivered or
developed by Cholla.

            To be
enforceable, the parties must agree to the material terms of the contract.  T.
O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 221 (Tex. 1992).  When an agreement leaves material matters
open for future agreement and that agreement never occurs, the contract is not
binding on the parties and constitutes merely an agreement to agree.  Playoff
Corp. v. Blackwell, 300 S.W.3d 451, 455 (Tex. App.Fort Worth 2009, pet.
denied).  Next, whether a term is material
is determined on a case-by-case basis.  T.
O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d at 221.  And, in making that assessment, we consider
whether the uncertainty imposed derails the greater purpose embodied in the
agreement.  See Thedford Crossing, L.P. v. Tyler Rose Nursery,
Inc., 306 S.W.3d 860, 868-69 (Tex. App.Tyler 2010, pet. filed); see also Komet v. Graves, 40 S.W.3d
596, 602 (Tex. App.San Antonio 2001, no pet.) (determining that a term could
be left open without destroying the contracts effectiveness).  With this in mind, we turn to the exploration
agreement at bar.  

            The
purpose of the agreement was to pool resources to produce oil and gas.  Indeed, the continued viability of the
agreement was dependent upon Cholla drilling a test well by a time certain at a
location on which both parties had to agree. 
If such a location could not be agreed upon within the pertinent time
frame, the contractual arrangement ended. 
Moreover, Aurora was under no obligation to approve of a drilling site
before the drilling deadline.  From this,
we cannot but conclude that both the time within which Cholla had to drill and
the provision regarding the mutual selection of the initial drilling site were
material, if not pivotal, to the existence of the accord.  Both were more than mere incidental details.[2]  See
R.I.O. Systems, Inc. v. Union Carbide Corp., 780 S.W.2d 489, 491-92 (Tex.
App.Corpus Christi 1989, writ denied) (holding that when R.I.O. Systems agreed
to purchase a plant at a price based on 10% of the pretax  profits associated with the plants operation
and the definition of pretax profits was to be agreed on later by the parties,
the missing term was the essence of the contract and not a mere detail); see also Fort Worth Indep. Sch. Dist. v. City of Fort
Worth, 22 S.W.3d 831, 846-47 (Tex. 2000) (holding that a letter agreement
whereby the city committed that, if it negotiated a new agreement with Southwestern Bell, it would
arrive at an appropriate arrangement to distribute revenue to the school
district was not enforceable); Playoff Corp.
v. Blackwell, 300 S.W.3d at 458 (holding an employment agreement unenforceable when
there was no agreed method of determining the fair market value of the company and the parties
acknowledged that they had no understanding of how it was to be
calculated).   

            Next,
Aurora relies upon Medallion
International Corporation v. Sylva, No. 10-01-00234-CV, 2004 Tex. App. Lexis 4974 (Tex. App.Waco June 2, 2004, no pet.) (mem. op.) to support
its proposition that there was an enforceable agreement.  In that case, the court relied upon the facts
that the consulting and marketing agreement was signed before a notary by two
sophisticated businessmen, it included seven clauses setting out the parties
respective obligations including indemnification and cancellation clauses, and
the parties had begun performance under the contract. Yet, at bar, we have no
provisions defining or regulating how the parties were to select a drilling
site.  So, there was nothing by which to
gauge the bona
fides of Auroras conduct.  That differs
from the situation in Medallion. 

            While
it is true that there had been some performance by Aurora and Cholla (given the
assignment of leases and payment of money), we find that insufficient to render
the contract enforceable.  Actual exploration
for and production of oil and gas could not begin until both parties agreed
upon a location for the test well, and Aurora had no obligation to so agree. 
Without the drilling of a test well, the purpose of the contract would
be thwarted.  We find as a matter of law that the
agreement was unenforceable.

            Unjust Enrichment

            Aurora
also argues that Cholla was not entitled to the return of its $50,000 because
unjust enrichment is not applicable.  Unjust
enrichment is an equitable principle that is the result of a failure to make
restitution of benefits wrongfully or passively received under circumstances
that give rise to an implied or quasi-contractual obligation to repay.  Foley
v. Daniel, No. 08-07-00188-CV, 2009 Tex. App. Lexis 8028, at *6 (Tex. App.El Paso
October 15, 2009, no pet.); Walker v.
Cotter Props, Inc., 181 S.W.3d 895, 900 (Tex. App.Dallas 2006, no pet.).  While it often applies when one person has
obtained a benefit from another by fraud, duress, or by taking an undue
advantage, Walker v. Cotter Props, Inc., 181 S.W.3d at
900, it is also available if a contract is unenforceable, impossible, not fully
performed, or void for
other legal reasons.  SCI Texas Funeral Services, Inc. v. Hijar, 214 S.W.3d
148, 156 (Tex. App.El Paso 2007, pet. denied); French v. Moore, 169 S.W.3d 1, 11 (Tex. App.Houston [1st
Dist.] 2004, no pet.).  Indeed, fraud is
not a requisite component for a finding of unjust enrichment.  Southwestern
Bell Tel. Co. v. Marketing on Hold, Inc., 170 S.W.3d 814, 827 (Tex. App.Corpus Christi
2005), revd on other grounds, 308 S.W.3d 909 (Tex. 2010). 

            In
preparation for performance under the contract, Aurora assigned its interest in
four leases to Cholla[3]
and Cholla paid $50,000 to Aurora.  We
have nevertheless
determined that the agreement is unenforceable and Aurora has been reassigned
its leases.  Under these circumstances,
we find it would be inequitable for Aurora to retain the $50,000.  Moreover, while Aurora argues that Cholla
received the benefit of certain geological and geophysical data under the
agreement, there is no summary judgment evidence of that in the record.  While we agree that Cholla had the right to
that information under the agreement, the nature and extent, if any, of what
was actually obtained by Cholla is not before us.        

            Accordingly,
the summary judgment is affirmed.

 

                                                                                    Per Curiam











[1]A
farmout agreement is one in which a lease owner who does not want to drill an
oil or gas well assigns the lease or some portion of it to another
operator.  The assignor may retain an
overriding royalty payment or production payment.  Young
Refining Corp. v. Pennzoil Co., 46 S.W.3d 380, 389 (Tex. App. Houston [1st Dist.] 2001, pet. denied).  





[2]Moreover,
while we may not rewrite the agreement of the parties, we note that if we find
the location of the test well to be a nonessential term, Aurora could earn
$50,000, obtain the return of its leases, and possibly obtain additional leases
by refusing to agree on a location.  





[3]There
is no summary judgment evidence that Aurora ever owned the fifth lease
specified in the exploration agreement.