**CORPORATE LEASING
INTERNATIONAL,
INC., Appellant,**

v.

**Rodger D. GROVES, D.D.S, and William
G. Hanson, D.D.S., Appellees.**

No. 2–95–123–CV.

Court of Appeals of Texas,
Fort Worth.

June 6, 1996.

Rehearing Overruled Aug. 15, 1996.

Vincent J. Hess, Robert T. Mowrey, Cynthia Keely Timms, Locke, Purnell, Rain & Harrell, Dallas, for appellant.

G. Craig Hubble, Thurman & Andres, P.C., Arlington, for appellee.

Before CAYCE C.J., and DAY and BRIGHAM, JJ.

## OPINION

BRIGHAM, Justice.

In a question of first impression, this court is being asked to determine whether an owner of a dental laser is required to register the equipment with the state regulatory authority where that owner is not in possession of the equipment and is not using the equipment to treat patients. We hold that under such circumstances, the owner is not required to register the device.

Appellant Corporate Leasing International, Inc. ("CLI") seeks reversal of a summary judgment that declared illegal a lease of dental lasers to appellees Rodger D. Groves and William G. Hanson. Appellees had filed a declaratory judgment seeking to have the lease declared illegal, void, and unenforceable after CLI failed to register the lasers. We reverse the judgment of the trial court and render judgment for CLI.

## FACT SUMMARY

CLI entered into separate agreements with Groves and Hanson to lease dental lasers for use in the dentists' respective practices. The lease with Hanson was signed on August 15, 1991, and the lease with Groves was executed on September 9, 1991. Paragraph five of each lease required the dentists to "use the [leased] Equipment in the regular course of business only" and to "comply with the laws, ordinances, regulations, requirements and rules with respect to the use, maintenance and operation of the Equipment." The leases also required the dentists to pay "license and registration fees ... and other charges imposed on the ownership, possession or use of the Equipment during the term of [the] lease."

Groves and Hanson used the lasers in their offices and two years after entering into the lease agreements, they filed registration applications with the Texas Department of Health's Bureau of Radiation Control. They registered their dental lasers according to

the Texas Regulations for the Control of Radiation. *See* TEX. HEALTH & SAFETY CODE ANN. § 401.101 et. seq. (Vernon Supp.1996). Hanson's laser registration certificate was dated November 23, 1993, and Groves's laser registration certificate was dated May 10, 1994. ·

Groves and Hanson stopped making payments under their lease agreements in October 1993 and they filed suit under the Texas Uniform Declaratory Judgments Act claiming that their lease agreements were illegal, void, and unenforceable because CLI had not obtained a license, registration, or exemption from the Texas Department of Health. CLI then filed a counterclaim seeking the money owed by Groves and Hanson under their respective leases.

Both sides filed motions for summary judgment, and CLI attached to its motion and its response to appellees' motion an affidavit from Jimmy Lee Sands, the administrator for the Registration Branch of the Radiation Bureau. In the affidavit, Sands stated that CLI had no obligation to register the lasers. The trial court sustained most of appellees' objections to the Sands affidavit, expressly found that the lease agreements were "illegal, void and unenforceable," and rendered summary judgment for Groves and Hanson.

## POINT OF ERROR ONE

In its first point of error, CLI claims the trial court erred in granting summary judgment for Groves and Hanson and in denying CLI's motion for summary judgment. Groves and Hanson moved for summary judgment claiming that their contract with CLI was illegal because CLI owned the lasers and had not registered them with the appropriate state agency. CLI responded that it had "never operated or even seen the equipment" because the lasers were shipped directly to Groves and Hanson from the distributor after being purchased by CLI. CLI claimed that under these circumstances, it is not subject to section 401.101.

CLI argues that the trial court's interpretation of section 401.101 conflicts with the statutory scheme and with the administrative construction of the statute as evidenced by the regulations, and that even if CLI is required to register the lasers, its failure to do so does not render the contracts unenforceable.

## The Standard of Review

■ In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the movant, *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301–02 (Tex.1990), and all doubts about the existence of a genuine issue of a material fact are resolved against the movant. *Cate*, 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.*, 391 S.W.2d at 47.

■ In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995); *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.*, 391 S.W.2d at 47.

■ The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *City of Houston*, 589 S.W.2d at 678.

■ When the trial court's order granting summary judgment for one movant and denying summary judgment for the other does not specify the grounds on which it rests, we may affirm the trial court's judgment if any of the grounds raised in the prevailing movant's motion are meritorious. *Wiman v. To-*

*maszewicz,* 877 S.W.2d 1, 5 (Tex.App.—Dallas 1994, no writ). We may also reverse the trial court's judgment and render judgment for the other movant based on any meritorious grounds raised in its motion. *Id.* On appeal, we must consider all the evidence accompanying both motions. *Id.*

### The Health and Safety Code

Section 401.101 of the Health and Safety Code states that a person

> may not use, manufacture, produce, transport, transfer, receive, acquire, own, possess, process, or dispose of a source of radiation unless that person has a license, registration, or exemption from the department or commission as provided by this chapter.

TEX. HEALTH & SAFETY CODE ANN. § 401.101 (Vernon Supp.1996).

Section 401.001 of the Health and Safety Code states that "it is the policy of the state to institute and maintain: (1) a regulatory program for sources of radiation ... and (2) a program that permits development and use of sources of radiation for peaceful purposes consistent with public health and safety...." TEX. HEALTH & SAFETY CODE ANN. § 401.001 (Vernon 1992). The purpose of section 401.002 is to provide a program to:

> (1) ensure effective regulation of sources of radiation for protection of the occupational and public health and safety and the environment;
>
> (2) promote an orderly regulatory pattern in the state, among the states, and between the federal government and the state, and facilitate intergovernmental cooperation with respect to use and regulation of sources of radiation to minimize regulatory duplication;
>
> (3) establish procedures for assumption and performance of certain regulatory responsibilities with respect to sources of radiation; and
>
> (4) permit maximum use of sources of radiation consistent with public health and safety and environmental protection.

TEX. HEALTH & SAFETY CODE ANN. § 401.002 (Vernon 1992).

CLI points out that throughout the Health and Safety Code, the Legislature stated its intent to govern sources of radiation. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 401.103(a), 401.104(a),(c), 401.106 (Vernon 1992 & Supp.1996). Notably, the Department is required to maintain a file of registrants *possessing sources* of radiation. TEX. HEALTH & SAFETY CODE ANN. § 401.058(b)(2) (Vernon Supp.1996).

The Texas Board of Health is charged with drafting rules and guidelines for the licensing and registration of radiation *sources.* TEX. HEALTH & SAFETY CODE ANN. § 401.103(a) (Vernon Supp.1996). As a result, the board adopted Regulations for the Control of Laser Radiation. *See* 25 TEX. ADMIN. CODE § 289.2 (West 1995). The regulations require the *"registration of all equipment* designed to produce laser radiation." TEXAS REGULATIONS FOR THE CONTROL OF LASER RADIATION at i (1984) (emphasis added). They also state that the purpose of the regulations "is to *provide guidance* for safe use of laser products and laser installations." *Id.* (emphasis added).

Elsewhere, the regulations provide instructions for the registration of *"possession and use* of laser products or laser installations." *Id.* at § 70.1 (emphasis added). The regulations require "all laser products or laser installations unless exempt" to be registered by *"each person having possession of, or using* sources of laser radiation." *Id.* at §§ 70.2, 70.5(a) (emphasis added).

### Application of Law to Facts

■ CLI, Groves, and Hanson do not dispute that the dental lasers in question are sources of radiation regulated by chapter 401. It is undisputed that:

● CLI owned the lasers;

● CLI leased the lasers to Groves and Hanson;

● CLI did not have possession of, or ever use, the dental lasers;

● Groves and Hanson had possession of and used the lasers;

● Groves and Hanson were required to register the lasers; and

● Groves and Hanson registered the lasers.

We conclude that the district court erred in determining that CLI, as the nonpossessory, nonusing owner, was required to register the lasers.

■ A provision in a statute should not be given a meaning that conflicts with other provisions if reasonable harmony is possible. *Estate of Padilla v. Charter Oaks Fire Ins. Co.,* 843 S.W.2d 196, 198 (Tex.App.—Dallas 1992, writ denied). One provision should not be given a meaning out of harmony or inconsistent with the other provisions, even though it might be susceptible to such construction if standing alone. *City of West Lake Hills v. Westwood Legal Defense Fund,* 598 S.W.2d 681, 684 (Tex.Civ.App.—Waco 1980, no writ). To determine legislative intent, a court should read the statute as a whole and not rely on isolated provisions. *Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex. 1985).

Although a portion of the Health and Safety Code bars the ownership of a radiation device unless the device is registered, the majority of chapter 401 addresses regulation of *sources* of radiation, rather than the owner or possessor. The Health and Safety Code states that it is concerned with the *use* of *sources* of radiation for purposes consistent with public health and environmental protection. TEX. HEALTH & SAFETY CODE ANN. § 401.001 (Vernon 1992). We conclude that in drafting the statute as it did, the Legislature was primarily concerned with the possessor and operator of the device.

Groves and Hanson argue that CLI's argument is defeated by a review of sections 70.5(j) and 70.7 of the Texas Regulations for the Control of Laser Radiation, which both deal with lasers brought into the state for temporary use. We note that section 70.5(j) applies to "the person proposing to use" "any source of laser radiation not registered or exempted." We read this provision in its entirety as regulating the person possessing and using, rather than merely owning, the radiation device. We also read section 70.7 as pertaining to the possessor-user, rather than the owner.

■ We do, however, reject CLI's argument that it was not required to register the dental lasers because to do so would be unnecessarily duplicative of Groves's and Hanson's registrations. To focus on that apparent redundancy could create an argument for future user-possessors who desire to avoid the requirement of registration in the instance where the nonusing, nonpossessory owner has already registered the device. For this court, the issue turns on the activities of the parties in relation to the laser, not the number of registration forms completed.

The trial court granted summary judgment for Groves and Hanson and denied summary judgment for CLI on the basis that the leases were illegal. The trial court did not, however, specify in its partial summary judgment order that the leases were illegal because CLI failed to register the lasers, nor did the court formally find that CLI was required by law to register the equipment. However, we conclude that the trial court believed CLI had an obligation to register the lasers and its failure to do so rendered the leases illegal.

■ A contract that could have been performed in a legal manner will not be declared void, illegal, and unenforceable merely because it may have been performed in an illegal manner or because illegal acts were committed in carrying it out. *Lewis v. Davis,* 145 Tex. 468, 199 S.W.2d 146, 149 (1947). Texas courts have also rejected claims that contracts are illegal where nothing in the contracts required a violation of the law. *See Wade v. Jones,* 526 S.W.2d 160, 163 (Tex.Civ.App.—Dallas 1975, no writ). Even if CLI, as the nonpossessory, nonusing owner of the lasers, had a duty to register the lasers, its failure to do so did not render the *leases* illegal because the evidence does not show that CLI could not have registered the lasers or performed the contract in a legal manner. *Id.*

Although we find no disputed material facts, we conclude that Groves and Hanson were not entitled to summary judgment as a matter of law. We do not read chapter 401 as requiring registration by a nonpossessory, nonusing owner, but even if CLI *should* have registered the equipment, the lease agree-

ment was not illegal because of CLI's failure to do so.

CLI moved for summary judgment on the basis that Groves and Hanson executed leases with CLI, defaulted on the leases, obtained the benefits of the use of the lasers, and waived any right to claim that the leases were void or voidable. The lease terms for default allowed CLI to accelerate the entire amount of unpaid rentals and penalize the defaulting lessee an additional ten percent of the original equipment cost as a prepayment penalty. Summary judgment should have been rendered for CLI and we reverse the judgment of the trial court and render judgment for CLI. Point of error one is sustained; however, we remand for calculation of damages.

In its motion for summary judgment, CLI proved how much was owed in unpaid rentals under the lease [1] and claimed that the dentists owed $5,290.00 as "ten percent of equipment cost." Although the dentists did not controvert the amount owed to CLI in past and future rentals and local and property taxes, they did attach summary judgment proof showing the lasers were worth $10,000. Because we cannot determine the value of the lasers, we cannot figure the ten percent equipment cost penalty owed by each dentist. Additionally, CLI demonstrated the attorneys' fees incurred in pursuing their claim, but their figures did not include the cost of representation on remand for determination of damages.

In its second point of error, CLI claims that the trial court erred in sustaining Groves and Hanson's objections to the affidavit of Jimmy Lee Sands, the administrator for the Registration Branch of the Radiation Bureau, which had been attached to CLI's motion for summary judgment. Because we do not rely on Sands's affidavit in sustaining point of error one, any analysis of point of error two would be merely advisory. As a result, we need not address CLI's second point of error.

## POINTS OF ERROR THREE AND FOUR

In its third point of error, CLI claims that the trial court erred in awarding attorneys' fees to Groves and Hanson because the dentists failed to prove, as a matter of law, any of the elements needed to recover such fees under the Texas Uniform Declaratory Judgments Act and failed to prove that the award of such fees was equitable and just. CLI also claims, in its fourth point of error, the trial court erred in awarding Groves and Hanson post-judgment interest on their attorneys' fees from the date that the final judgment was signed, instead of from the date that an appeal was perfected, the date that the judgment of the appellate court became final, or the date that application for writ of error was filed.

Groves and Hanson sought attorneys' fees under the Declaratory Judgments Act. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 1986). The final judgment awarded Groves and Hanson fees of $28,000.00, with a remittitur that provides for a reduction in fees if no appeal is taken.

■ A party must satisfy two requirements to obtain an award of attorney's fees. *Rodgers v. RAB Investments, Ltd.,* 816 S.W.2d 543, 551 (Tex.App.—Dallas 1991, no writ). First, a party must prevail on a cause of action for which such fees are recoverable. *Id.; Vandever v. Goettee,* 678 S.W.2d 630, 636 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Next, the party must recover damages. *Rodgers,* 816 S.W.2d at 551; *Chapman Air Conditioning, Inc. v. Franks,* 732 S.W.2d 737, 741 (Tex.App.—Dallas 1987, no writ). Because Groves and Hanson should not have prevailed on their summary judgment, they were not entitled to attorneys' fees and interest on the fees. Points of error three and four are sustained.

The judgment of the trial court is reversed, and judgment is rendered for CLI that Groves and Hanson breached valid and enforceable leases; that CLI recover from

1. The summary judgment proof showed that Groves owed $10,980.24 in past due rent, $34,585.05 in discounted future rent, $850.97 in local taxes, and $811.88 in property taxes. The summary judgment proof also showed that Hanson owed $9,809.76 in past due rent, $29,826.60 in discounted future rent, $711.28 in local taxes, and $1,296.28 in property taxes.

Groves $10,980.24 in past due rent, $34,-585.05 in discounted future rent, $850.97 in local taxes, and $811.88 in property taxes as damages plus prejudgment and post-judgment interest; and that CLI recover from Hanson $9,809.76 in past due rent, $29,-826.60 in discounted future rent, $711.28 in local taxes, and $1,296.28 in property taxes as damages plus prejudgment and post-judgment interest. We remand this matter to the trial court for determination of the value of the lasers so that the ten percent equipment cost penalty may be added to the past and future rentals and local and property taxes established in CLI's summary judgment proof and for recalculation of attorneys' fees for CLI.